## Poorman v. Poorman.

*Husband and wife—Divorce—Action by husband—Cruel and barbarous treatment—Indignities—Endangering life—Averments—Act of June 28, 1923.*

1. Under the Act of June 28, 1923, § 1, P. L. 886, the same averments must be made and proved in a suit by the husband for divorce upon the ground of cruel and barbarous treatment as by the wife; hence, it must be averred in the libel and proved at the hearing that the cruel and barbarous treatment endangered the life of the libellant.

2. Evidence that on one occasion respondent threw a flower vase at libellant and at times "cursed" him, because of his meanness toward her, does not prove that the husband's life was endangered, and a divorce on the ground of cruel and barbarous treatment and indignities to the person will be refused.

Exceptions to master's report.    C. P. No. 5, Phila. Co., Dec. T., 1925, No. 1622, in Divorce *a. v. m.*

*J. B. Given,* for libellant; *J. F. Murphy,* for respondent.

SMITH, J., Jan. 17, 1927.—This is an action in divorce, wherein the libellant, Charles Foster Poorman, avers that Emma L. Poorman, his wife, in violation of her wedding vows, had, by cruel and barbarous treatment, rendered his condition intolerable and had offered such indignities to his person as to render his condition intolerable and life burdensome and thereby forced him to withdraw from his home and family on Sept. 26, 1925.

The master heard the testimony and recommended that the prayer of the libel be refused and the libel dismissed.    To this report the attorney for the libellant filed the following eight exceptions:

"1. The learned master erred in finding that 'the charge of the libellant that the respondent, Emma L. Poorman, by cruel and barbarous treatment and indignities to the person, rendered the condition of her husband, the libellant, intolerable and life burdensome and thereby forced him to leave his house and family, is not, in the opinion of the master, sustained by the evidence.'

"2. The learned master erred in his statement of the law when he said: 'At the present time a divorce cannot be granted to a husband for cruel and barbarous treatment that rendered his condition intolerable and life burdensome unless, in addition to that, it endangered his life, and this endangering of his life must be alleged in the libel.'

"3. The learned master erred in his conclusion that, because libellant did not allege in his libel that the cruelty was such as to endanger his life, the libel is defective.    This does apply to a libel filed by the wife, but not in cases where the husband files the libel.

"4. The learned master is unfair and unjust in his criticism of the testimony of the libellant in this case when he says the libellant knew where his wife resided at the time he filed the libel.    Of course, he may have been ignorant of her whereabouts at that time, but subsequently learned of her address. As a matter of fact, counsel for libellant forwarded the address of respondent to the master for him to serve her notice of the meeting, and, despite the good faith shown by libellant here, the master reaches the monstrous conclusion that libellant swore false in one thing and he is false in all.

"6. The learned master erred in recommending 'that the prayer of the libel be refused and that the libel be dismissed for lack of proof.'

"7. The learned master erred in not finding as facts that the respondent, by cruel and barbarous treatment and indignities to his person, rendered the condition of her husband, the libellant, intolerable and life burdensome and thereby forced him to leave his house and family.'

"8. The learned master erred in not finding that the evidence fully sustained the charges of the libel.

"9. The learned master erred in not recommending that the prayer of the libel be granted and a decree of divorce from the bonds of matrimony be entered in favor of libellant."

An examination of the testimony justifies the recommendation of the master.

In the first instance, the attorney for the libellant has entirely overlooked the Act of Assembly of June 28, 1923, §1, P. L. 886. In that statute it is provided that the same averments must be set out and proved in a divorce based upon the cause of action of cruel and barbarous treatment by the husband as by the wife. The attorney for the libellant did not consider this act in the averment contained in his libel.

Even upon the merits of the case, if the averment of cruel and barbarous treatment had been properly and correctly stated, still there would not be the element necessary, to wit, that any cruel and barbarous treatment endangered the life of the libellant. There, no doubt, was considerable quarreling between the libellant and respondent, evidenced by reading the testimony. The libellant was just as guilty as the respondent. The master indicates in his report that he does not wholly believe the testimony of the libellant by reason of the fact of certain evasive answers made by him. Again, this conclusion is justified by the reading of the notes of testimony.

In the libel, the libellant gave as his address the Post of the American Legion. At the preliminary hearing he admitted he only received his mail there and that he actually lived elsewhere. In the libel, he specified the address of the respondent as No. 2509 North Gratz Street. Service of the libel and subpœna in this case had to be procured by publication, and yet, upon inquiry directed to her employer, within a few days the master was able to locate her from information given him by the libellant himself. At the hearing, the respondent stated that the libellant positively knew where she lived.

The testimony of the libellant was contradicted in its major part by the respondent, who, apparently, was frank and honest in her testimony. In another part of the testimony the libellant stated that, on a certain occasion, the respondent had thrown a knife at him. He was rather vague and indefinite as to when this happened and could not even state the year. He also testified that on another occasion respondent hit him over the head with a flower vase, and there was no testimony as to when and where it happened. In his testimony he assigned as indignities to the person the fact that on different occasions respondent used opprobrious names. This did not happen in the presence of any other witness, and there is no testimony as to how often it happened.

The respondent made a denial of the principal averments. She denies that she ever threw a knife at him. She admitted one time throwing a flower vase at him when he made her very angry. The libellant had promised to take the respondent out for an automobile ride and kept her waiting several hours. When he did appear, he had in the automobile another woman and her daughter, and, when being asked where he had been all the time, he told his wife it was none of her damned business. She further admits that at times she did call him names, but says that she was justified in doing that because he never

Poorman v. Poorman.

furnished her with any money to buy food, and that he would buy food just for himself, and that he made her pay the rent. The respondent furthermore testified that when they separated the libellant told her that if she did not want the furniture, he would get a second-hand man or a junk man to take it out. After some discussion, it was agreed between them that he would take the automobile and she would take the furniture.

From the testimony it would indicate that the respondent was an industrious, hard-working wife. There is no doubt that there was constant quarreling, but from a reading of the testimony it is evident that it was caused by the libellant's meanness. Respondent testified that she would "curse" at him at times, but that he did his share of it.

There is nothing here of a convincing nature which would indicate that this libellant is entitled to a divorce. In the case of McCommons, Jr., v. McCommons, 85 Pa. Superior Ct. 323, it will be observed that the facts are somewhat similar to the case at bar. In the opinion of Trexler, J., on page 328, he stated: "The libellant has not made out his case by evidence sufficient to carry conviction. There is no question about it but that this is a case of incompatibility of temper. The refusal to have sexual intercourse is not sufficient ground for divorce: Platt v. Platt, 38 Pa. Superior Ct. 551, and cases there cited. We think, after considering all the testimony in the case, the course of conduct which existed was not such as would endanger his life, nor were the indignities such as to render his condition intolerable and his life burdensome. Both parties were equally at fault."

The recommendation of the master that the prayer of the libel be refused and the libel dismissed is, therefore, approved. Exceptions dismissed.